Disclosure of Expert Testimony
(Preliminary Report)
Cynthia Mingo v. City of Mobile
U.S. District Court for the Southern District of Alabama
(Southern Division)
Case No. 1:12-CV-00056-KD-B
Date 12 June 2013

This report is the product of the review and evaluation of documentation currently available to the plaintiff regarding the in-custody death of Daniel Mingo which occurred after Mingo was hog-tied on January 21, 2010 at or near 1263 Carlton Acres West in the City of Mobile, Alabama. Mobile Police Department Officers present at the scene of and involved in the pursuit, arrest and initial confinement include, but are not limited to Officers Aaron Kelly, Daryl Law, and Hugh Barnes. Officer Barnes employed a Taser on Mingo and helped other officers place Mingo in a four point restraint ("hogtie" is the term used by the Mobile Police Department (MPD) Procedure Manual when referring to the more formal term of four point restraint). The four point restraint is performed by handcuffing an individual behind the back and then pulling the legs up against the buttocks. The ankles are then lashed to the cuffed hands of the individual being restrained with a cord or shackle. The practice is forbidden in a number of large agencies, including the New York City Police Department in 1987 and the Los Angeles Police Department in 1997 due to in-custody deaths. Hog-tying is, by Mobile Police departmental general order, allowed but closely regulated.

The facts show that Mobile Police Department's arresting officers violated their departmental directives and Daniel Mingo's Fourth Amendment right to be free from unreasonable seizures and from the use of excessive force. Arresting Police Officers were acting under color of law and under the authority vested in them as police officers by the City of Mobile. Apprehension by the use of force is a seizure subject to the Fourth Amendment's reasonableness requirement. Factors and circumstances that may be considered in assessing the reasonableness of the force include severity of the crime allegedly committed by the arrestee, whether the arrestee posed an immediate threat to the safety of the officer or others and whether the arrestee was resisting arrest or attempting to evade arrest by fleeing. An officer's good intentions or the absence of malice are subjective and do not make an objectively unreasonable use of force lawful. The expert's review of the document file received from the City of Mobile indicates that the death was not justified, demonstrated excessive use of force under the department's own standards, and that Mingo's death was an avoidable breach of his Fourth Amendment Constitutional protections.

The uncontested facts of the case include the following: (1) The initial incident which brought Daniel Mingo to the attention of Mobile Police Officer Aaron Kelly initially was a reckless driving incident and possible Driving Under the Influence (DUI) charge for erratic driving. He was later thought to have thrown away a small quantity of a controlled substance. The most serious charges that could be lodged against Daniel Mingo are DUI, Possession of a Controlled Substance and Resisting Arrest. (2) The scenario leading to the arrest and death of Mingo began with a foot pursuit by Officer Kelly after he stopped Mingo for the alleged traffic offense. (3) Officer Kelly lost contact with Mingo and other officers joined in the search and pursuit. (4) After a short search, Mingo was found by other officers hiding under furniture in a storage shed at or near 1263 Carlton Acres West by Officer Daryl Law. Law, with the help of other officers, including Campbell and Buffkin extracted Mingo from under the furniture in the shed and managed to handcuff him outside. (5) Mingo was thrashing around and saying "crazy stuff." A decision was made by the officers in contact with Mingo to place him in a four point restraint (or hog-tie him.) During the effort to apply the restraint Mingo grabbed an officer's arm. (6) Officer Hugh Barnes initiated a drive stun with his Taser. Mingo was hog-tied by Barnes and other officers present and carried to a patrol car where he was placed in the back seat on his stomach. According to Barnes, Mingo's body was initially slightly tilted with his face toward the back of the patrol car's back seat. Officers near the car stated that Mingo made noise and beating on something inside of the car. (7) A number of officers and supervisors were standing around the patrol car which held Mingo while waiting for paramedics to arrive for a medical check on him. There is no consensus as to whether the paramedics were coming to check Mingo due to the Taser stun or for some other reason. (8) Upon arrival of the paramedics, Daniel Mingo was discovered to be unconscious and not breathing. He was transported to the hospital where he later died. The coroner stated the cause of death as "excited delirium."

At the time he lost consciousness and stopped breathing, Daniel Mingo was in the rear prisoner compartment of a Mobile Police Car. When the paramedics arrived, he was on his stomach with his hands cuffed behind his back and his feet pulled up to his buttocks and shackled to his hands.

Mingo had fled from a traffic stop. When the arresting MPD officers encountered him just minutes later, he was, by their account, (a) acting irrationally, (b) hiding under furniture, (c) mostly undressed, (d) yelling incoherently and was observed (e) thrashing against his restraints. Each are indicators listed in MO-2005-88.III.E that Mingo was suffering from excited delirium; a condition termed by MO-2005-88 to be a "potentially lethal emergency."

Numerous provisions of the General Orders and procedures of the Mobile Police Department were unmistakably written to prevent this very kind of in-custody death

suffered by Daniel Mingo. General Order 70.2.1 titled PRISONER RESTRAINT REQUIREMENTS contains the following provision: (in first paragraph) "Agency members should be aware some techniques have been found to contribute to serious physical injury or death (e.g., "positional asphyxia")."

Daniel Mingo clearly demonstrated the kind of person MPD's MO-2005-88.III.E *Procedure on Recognizing and Handling Persons with Mental Illness/Symptoms to be aware of from subjects in custody and the police response to a person in an excited state* was designed to protect. Mingo exhibited at least five symptoms the department order stated were indicators of the potentially lethal emergency known as excited delirium, a hazard that they were warned to watch for. MPD officers ignored the indicators and failed to call for a medical unit to be started to the scene immediately, as directed by the order. Officers further disregarded their department's clear directive in this same order that "Subjects shall not be transported in the hog-tied position face down." While some officers maintain that Mingo was laid on his side in the back seat of the car, that is a physical impossibility. The prisoner seat of a patrol car with the protective shield in front of it is not wide enough to place any adult male on his side with his hands and feet shackled together behind his waist. Officer Barnes stated that he placed Mingo on his right side with his face toward the back of the car seat. If this is correct, the officers violated General Order #70, (dated 03/06/08), Section 70.2.1. which states that officers should ensure that the restrained suspect should be able to breathe without straining. "The prisoner should be placed on his/her side facing away from the back of the seat." Once a person is loaded for transport, the order directs that an officer monitor the restrained suspect "closely and continuously." On page 6 of 7 of MO-2005-88.III.E, the order clearly warns that positional asphyxia can result from placing a suspect on his stomach. The order notes that being wedged in a confined space with arms behind the back can cause increased abdominal compression. This, the order notes, limits air getting to the lungs. The result can be brain damage and death. Both were experienced by Daniel Mingo.

A review of the pertinent documentation points to the fact that MPD officers were acting under the color of law and under the authority vested in them as police officers. Additionally, this review calls into question the results of any official or informal departmental review of this incident by the leadership of MPD. Failures by Mobile Police Department and its officers and supervisors resulted in the death of a man whose worst offense on the day of his arrest was a traffic violation. As seen in this review, Mobile Police Department had in place a set of General Orders and Procedures specifically established to preclude the type of incident that killed Daniel Mingo. (1) Officer testimony and their actions showed that they were insufficiently trained to recognize clear indications of mental disorder and the potentially lethal medical emergency known as excited delirium specifically

spelled out in MO-2005-88.III.E.  (2) Officers failed to properly position the hog-tied Mingo in the police car as directed by their G.O. 70.2.1. resulting in his inability to breathe.  (3) Officers failed to closely and continuously monitor Mingo to make sure he could breath, even though their procedures directed that action be taken.  (4) Several supervisors and experienced senior officers were present.  Negligent supervision compounded the lack of proper training and ensured Daniel Mingo's death.  (5) Finally, despite the repeated failures of officers and leaders that resulted in a preventable death and the violations of Daniel Mingo's Fourth Amendment Rights, no action has been taken to by the City of Mobile or its Police Department to find the problem, improve training and hold supervisors accountable.

This evaluation is based on a number of documents, including the following:  Deposition of Officer Aaron Kelly taken on 12 October 2012; Deposition of Officer Daryl Law taken on 12 October 2012; Deposition of Officer Hugh Barnes taken on 12 October 2012; Initial Autopsy Report on Daniel Mingo; General Order #1, Dated 6/25/08, Subject:  Law Enforcement Agency Role and Authority;  General Order #70, Dated 03/06/08, Subject:  Prisoner Transportation; MO-2005-88 dated 17 NOV 05 (Procedures for "Recognizing and Handling Persons with Mental Illness" addressed to All Personnel.)  Note Section III, pages (5 of 7) thru (7 of 7) regarding "Symptoms to be aware of in subjects in custody and in an excited state"; The Expert Opinion Review by James Lauridson, MD, of the Coroner's Report on the Death of Daniel Mingo; Communications Center Background Event Chronology without codes.

Qualifications:  See attached Curriculum Vitae.

Testified in one other case in the last four years.  Paid $880.00 for this report.  Paid at the rate of $80.00 per hour for research and $200.00 for live testimony.

NOTE:  This Disclosure of Expert Testimony is marked as a Preliminary Report due to the fact that a number of items due in discovery, including depositions and documents from Mobile Police Department have not been received.  It is subject to revision

/s/Ralph D. Long
Ralph D. Long
2790 Agnew Road
Pulaski, TN 38478