June 11, 2013

At the request of attorney Michael Wing, I have reviewed the following documents associated with the death of Daniel Mingo on January 28, 2010: autopsy report 10MB02425 Alabama Dept. of Forensic Sciences, medical records infirmary West, medical records Mobile Infirmary, medical records Newman's Ambulance, autopsy photographs from the Alabama Department of Forensic Sciences, and death certificate for Daniel Mingo. Requested but not yet received are tissue specimens from the Alabama Department of Forensic Sciences and Mobile Police investigative records. At The request of attorney Peter Mackey I performed a postmortem examination on the body of Daniel Mingo February 3, 2010. A supplement to this report that will include the findings of the postmortem examination will be provided following receipt of the above material.

Mr. Mingo was a 25-year-old man with a history of mental illness reported to be schizophrenia. Approximately midday on January 21, 2010, Mr. Mingo was taken into custody by the Mobile Police. Reports indicate that he was subdued following aggressive behavior. A Taser was reportedly used once striking him in the back. He was restrained and placed in the back of a police car. Sometime later he was noted to be unresponsive and ambulance personnel were called. Upon arrival the ambulance personnel noted that Mr. Mingo was face down with both hands and feet handcuffed in a hog-tied position. Apparently resuscitation efforts had not been initiated before the arrival of the ambulance.

He was found to be in complete pulmonary arrest and cardiac arrest. He had no shockable rhythm during transport. Upon arrival at Infirmary West cardiac function was restored. His body temperature was 98.8°F. A urine drug screen was positive for cannabinoids and negative for: opioids, alcohol, cocaine, methadone, amphetamine, barbiturates, benzodiazepines, phencyclidine and propoxyphene.

After resuscitation he remained comatose due to ischemic brain injury. During hospitalization his creatine phosphokinase levels reached extremely high values consistent with skeletal muscle injury. He died January 28, 2010.

Postmortem toxicology studies ( presumably on blood obtained during hospitalization) showed the presence of cannabinoids and midazolam. The conclusion of the report 10MB02425 is that Mr. Mingo died of excited delirium and that his death was the result of a natural disease process.

Excited delirium is a diagnosis that has no specific finding at autopsy. It is a diagnosis that is established by considering and excluding other possible causes of death. This requires examination of all available records including circumstances and medical records.

Although marijuana is occasionally associated with excited delirium, it is a very uncommon cause of this condition. Therefore it is my opinion that there is a very low probability that marijuana could be implicated as a presumed cause of excited delirium in this case.

It is my opinion that there is insufficient evidence to establish excited delirium as a cause of death in this case. But until I have reviewed additional material opining a likely cause of death is premature.

*James R. Lauridson*

James R Lauridson M.D.
May 29, 2013


On June 5, 2013 I reviewed the histology tissue slides from the autopsy performed by the Alabama Department Of Forensic Sciences. I have not received police investigative reports. Based on the findings of 2 autopsies, and reports of ambulance personnel is my opinion that Daniel Mingo died as a result of a asphyxia while in police custody. Review of police investigative reports may clarify this opinion.

Since June 5, 2013, I have received and reviewed deposition of police officers Kelly, Law and Barnes. I have not received the exhibits referenced in those depositions and the police video mentioned in the deposition of officer Kelly. I have not had access to statements of other officers at the scene, any scene diagrams, and photographs that might exist.

My need to review as much material as possible in this case is best summarized and supported by the following quote from <u>Forensic Pathology Principles and Practice</u>, Dolinak, Matshes, and Lew, page 311, 2005:

" *Deaths that occur during or shortly after a violent struggle with physical restraint may have a single clear cause of death. Most of the time however these types of death have many contributing factors that combine to result in an individual's demise only some of which may be identifiable at autopsy. It is not unusual for these deaths be multifactorial in etiology and attributable to a combination of factors including cocaine, methamphetamine and or other drug toxicity, the physiological effects of stress, obesity, coronary artery disease, cardiac hypertrophy, physical injury and various types of asphyxia. Detailed investigation of many sources will increase one's ability to understand the entire*

*dying process including the factors that led to the need for restraint and why the death occurred.*

*In cases involving struggle with physical restraint, it is important to have a detailed timeline of events, including both the duration and sequence of events, noting specifically what position the person was in when he became unconscious, how long he was in that position, and what resuscitative efforts were performed. Ideally, minute by minute accounts of the events as they unfolded are obtained as soon as possible after the incident has occurred, while the details are still fresh in the minds of the witnesses. Witness information may include police and fire rescue personnel and any independent witnesses to the event. The EMS and medical records, including vital signs, heart rhythms, level of consciousness, and other symptoms, should be carefully review. Detailed investigation is necessary for this to properly understand the circumstances of the death."*

--------------------

Lacking access to additional existing evidence and material, my present opinion is constrained to the materials that I have reviewed.

The exact position Mr. Mingo was placed in after the four-point restraint was applied, is unclear as there is disagreement amongst available statements. Likewise there is disagreement as to when Mr. Mingo stopped vocalizing (screaming and yelling) before he was discovered in cardiopulmonary arrest.

According to Officer Barnes, Mr. Mingo was placed on his side and was able to vocalize until his sudden cardiopulmonary arrest. These factors make an opinion of asphyxia due to restraint untenable.

<u>Given lack of additional information and data,</u> this man's death is best generalized as a "restraint associated death." It occurred in the setting of schizophrenia, marijuana use, police restraint and heart disease. Excited delirium is not present as previously indicated in this report.

<u>If there is no further evidence presented and if Officer Barnes' statements are accepted</u>, it is my opinion that Mr. Mingo died in the setting police restraint, schizophrenia and heart disease. To clarify:

Immediate cause of death: Cardiomegaly and single vessel coronary disease
Contributory cause: restraint
Contributory cause: schizophrenia

*James R. Lauridson* (signature)

**James R Lauridson M.D.**
**June 11, 2013**

---
**My professional fee for consultation is $400 per hour.**
---

**I have testified several hundred times during my career.**

This is a partial list of cases and represents the most accurate listing I can provide for cases over the past 6 years.

W. L. Lott v Ronald Bullock, Covington County, Mississippi, 2002-264C
    Medical Malpractice. Defendant

State v Tyler Edmonds, Oktibbeha County, Mississippi, 2004-CT-02081-SCT
    Criminal Murder Defendant

Reitha Sanders v William Causey, Hinds County, Mississippi 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CIV
    Medical Malpractice Defendant

Mark Allen Upton v Regional Paramedic Service, Walker County, Alabama, CV 2004-742
    Wrongful death Plantiff

Gabe Degregorio v Marion Wainwright, Harrison County, Mississippi, A-2402-2002-295
    Medical Malpractice Defendant

State v Hollilyn Baty, Charlotte County, Florida 07-76CF
    Criminal Murder Defendant

Denise Allcock v Antoinette Bannister, Harrison County, Mississippi, A2401-2004-266
    Medical Malpractice Defendant

Brenda Haggan v. Couch USA and Edward Booth, Macon County, Alabama, CV-07-9000051
    Personal Injury Plantiff

Dorothy Huelett v B&R Materials, Lowndes County, Alabama, CV-07-900002
    Wrongful death Plantiff

State v Michael Leggett, Lincoln County, Mississippi, 07-069-LT-1
    Criminal Murder Defendant

Lillian Woodley v PFG-Lester Broadline, Montgomery County, 2:07cv074-ID
    Wrongful Death Plantiff

Connie Cornelius v Wes Brown and Steve Smith, United States District Court of Northern Alabama, CV-06-HGD-2271-J
    Wrongful Death Plantiff

Cynthia Waldoup v City of Prattville, United States District Court Middle District of Alabama, 2:08-cv-278-B
    Wrongful Death  Plantiff

State v Timothy Boyle, Etowah County, Alabama
    Criminal prosecution

Patricia Dillard v Taylor D. Caffey  Dale County Alabama, CR-03-80-M
    Medical Malpractice Defendant

Walker, Freddie v Troy  Health & Rehab Center,  Pike County, Alabama, CV-2008-900032
    Wrongful Death Plantiff

Parish, Ed v Troy Health & Rehabilitation, Pike County, Alabama, Cv-2008-900086
    Wrongful Death Plantiff

State v Eleisha A. Sykes, Chicot County, Arkansas, CR-2008-79-1
    Criminal Defense

State v Brittany Duvall, Pope County, Arkansas, CR-2009-47
    Criminal Defense

State v Jamie Letson, Mobile County, Alabama
    Criminal Prosecution

State v  Timothy Stallworth, Montgomery County, Alabama
    Criminal Defense

State v Wilbourn, Morgan County, Alabama
    Criminal Prosecution

State v Lowe, Marshall County, Alabama
    Criminal Defense

G. WAYNE GROSS v REGIONAL PARAMEDICAL SERVICES, CV 2008-900065,  Walker County, Alabama
    Civil Planitff

Neal Aaron vs. Regional Paramedical Services, CV-2004-000540.00, Walker County, Alabama
    Civil Plantiff

State v Steven Odine, Baldwin County, Alabama
    Criminal Defense

State v Myers, Aberdeen, Mississippi
    Criminal Defense

Allen v Bunn Brothers, Tuscaloosa, Alabama
    Civil Plantiff

Humrick v CDD, Madison County, Alabama
    Civil Plantiff

United States versus Rocio Mask, Great Lakes Naval Station, Illinois
    Criminal  Defense

United States versus Jeniffer Arenivar, North Carolina

Criminal Prosecution

State v Eric Mickelson, Caddo County, Mississippi
    Criminal Defense

Robert Stallings v Antoine Rizk, MD; Harrison County, Mississippi, A2401-08-521
    Medical Malpractice, Defense

David Stewart versus John Barton, Perl River County, Mississippi, 2008–0675,
    Medical malpractice, plaintiff

Harold Rogers versus Perry County nursing home, Alabama, 53–CV–2011–90019
    Nonparty expert witness

State v Anthony Woods, Lauderdale County, Alabama
    Criminal Prosecution

Simthson v Moundville Health and Rehabilitation, CV-10-900077, Hale County Alabama
    Civil plaintiff

State v Cope, Caddo Parish, Louisiana
    Criminal defense

Ballard v Tulane Educational Fund, Orleans Parish,
    Medical malpractice defense

Stewart versus Barton, Pearl River County, Mississippi
    medical malpractice plaintiff

Moore v Southhaven, Montgomery County, Alabama
    Plaintiff

LANDON EVANS v ALABAMA POWER COMPANY, Jefferson County Alabama, CV 11-291
    plaintiff

---

Follows the report of findings from autopsy performed on February 3, 2010 and autopsy performed January 29, 2010 by the Alabama Department of Forensic Sciences.

---

# FINAL DIAGNOSIS

Name: Daniel T. Mingo
Date of Death: January 28, 2010
Date of Autopsy: February 3, 2010

Place of Autopsy: Bell Funeral Home, Hayneville, Alabama

## Final Diagnoses

1. Global cerebral ischemia
    a. Portions of necrotic cerebellum in the spinal canal
    b. Acute focal hemorrhage cervical spinal cord

2. Contusion inner lip

3. Coronary artery disease, 80% occlusion left anterior descending coronary artery

4. Focal bronchopneumonia, mild

5. <u>Noted from first autopsy documentation</u>:

    a. Fine superficial abrasions present over the right chest, abdomen, back, and arms. Larger ovoid superficial abrasions were present over the right and left knees.

    b. Toxicology studies showed presence of cannabinoids and midazolam.

    c. Cardiomegaly

**Summary**
This 25-year-old man was involved in an altercation with police officers. According to the officers he was subdued after the use of a Taser and reportedly being restrained by being hog-tied. After being hog-tied he was placed facedown in the back of a police vehicle. He suffered a cardiopulmonary arrest and was successfully resuscitated. His body temperature immediately after resuscitation was 98.8°F. Initial urine toxicology screening was positive for cannabinoids, but negative for opioids, alcohol, cocaine, methadone, amphetamines, barbiturates, benzodiazepines, phencyclidine's and propoxyphene. During subsequent hospitalization he developed a markedly elevated CPK consistent with skeletal muscle injury.

He suffered irreversible ischemic brain injury and died January 28, 2010 approximately 7 days after the initial incident.

**External Examination**

The body is that of a man whose recorded age is 25 years having medium stature and average nutritional status. The scalp hair is black, curly and closely cropped. A ⅛ inch black bread and mustache is on the face. The corneae are cloudy. The irides are brown. The ocular globes are flaccid. The external ears and nares are unremarkable. Natural teeth are present on the mandible and maxilla. Yellow metal caps are on the front maxillary incisors.

Indistinct tattoos are over the upper extremities.

The distortions of the skin induced by the prior autopsy dissection preclude accurate documentation of skin marks.

**Evidence of Prior Autopsy**
Evidence of a previous autopsy examination is present. An incision extends between the mastoid processes over the apex of the scalp. The scalp has been reflected anteriorly and posteriorly. The calvarium has been removed from the skull by a horizontal saw cut. The brain is absent as is the dura. The pituitary gland is present in the sella.

A vertical incision extends from the lower mid-forehead over the nasal bridge to the tip of the nose. This exposes the intact nasal bone which is free of hemorrhage.

A "Y-shaped" incision is over the anterior truck. The skin and attached subcutaneous adipose and connective tissue has been dissected from the deeper tissues. This process exposes these deeper tissues over all of the body with the exception of most of the face, the hands, the peri-genital area, the peri-anal area and the feet. The dissected skin and attached tissues lie loose attached in the region of the ankles and neck. The resulting mobility and distortion of the skin disrupts the usual relationship of the cutaneous landmarks.

The tongue, larynx, thyroid, hyoid bone, trachea, thyroid gland, and adjacent connective tissues have been removed from the mouth and neck. The sternum and immediately attached anterior ribs have been removed. All of the organs of the thorax and abdomen have been removed.

The organs have been dissected and the dissected portions have been placed in a plastic bag and placed in the cavity of the trunk. The small and large intestines have been placed in a separate red plastic bag.

**Evidence of Injury**

Portions of skin appear to have been removed in the region of the left neck, anterior lower chest, and the right wrist. In the region of the left neck a portion of skin is absent. This area is surrounded by a black written circle and indistinct lettering.

An abrasion and contusion is on the buccal surface of the lower lip. This has the configuration of the adjacent anterior teeth. Faint non-patterned abrasions are on the right inner surface of the anterior cheek. A ¼ inch superficial contusion is on the surface of the external left ear. An ovoid 2 inch by 2 ½ inch superficial sliding type abrasion is on the anterior aspect of the right and left knees. Healing faint linear abrasions are on the lower extremities and to a lesser degree the upper extremities. The hands have ink on the palmar surfaces. Injuries to the hands and feet are not evident.

**Evidence of Treatment**

A possible needle puncture mark is over the left antecubital fossa.

**Internal Examination**

**Head**
The subcutaneous tissues of the scalp are unremarkable. The calvarium and basilar skull are intact. Brain fragments included within the black plastic bag are soft and friable with distortion of orienting landmarks. The pituitary is in the sella and is unremarkable.

**Mouth and Neck**

The dissected glottis, epiglottis, larynx and proximal trachea are unremarkable. The tongue has been sectioned. The surface and deeper musculature are free of injury or hemorrhage.

### Cardiovascular
The previously dissected portions of heart weight 366 grams. The epicardial and endocardial surface are smooth and shiny. The coronary arterial tree has a probable non occluding atherosclerotic plaque in the proximal left anterior descending artery. Atherosclerotic plaques are on the intimal surface of the right and left coronary ostia. The right coronary ostium is reduced in size by approximately 50%. The available myocardium is free of lesion. The left ventricular free wall thickness is 1.0 cm. The septal thickness is 1.0 cm. The right ventricle is 0.5 cm in thickness. The cardiac valves are thin and pliable.
The aorta has rare atherosclerotic streaking.

### Pulmonary
The combined weight of the right and left lung fragments is 1095. The lung tissue is red and firm.

### Gastrointestinal
The reminants of esophagus, stomach and duodenum are unremarkable. The small and large intestines are of normal configuration.

### Genitourinary
The combined weight of the dissected kidneys is 251 grams. The available kidney tissue is unremarkable. The previously un-dissected testes are free of trauma and hemorrhage.

### Hepatobiliary
The liver fragments weigh 1543 grams. The liver tissue is dark brown. The gall bladder is not identified.

### Endocrine
Portions of the pancreas are unremarkable.

### Immunologic
The dissected spleen fragments weigh 206 grams. The spleen is dark red.

**Spinal cord**
The cervical, thoracic and lumbar vertebral spine is free of fracture. The previously un-dissected spinal cord is examined. Macroscopically no lesions are noted in the spinal cord.

---

## Microscopic examination

**Lungs**
Multiple sections of lung are examined. In addition to generalized congestion these sections show alternating areas of atelectasis and areas of alveolar hyperinflation. Pigmented macrophages are prominent within the alveoli. Small foci of acute bronchopneumonia are present.

**Heart**
Sections of myocardium are free of evidence of acute or chronic ischemic change. Mild myxoid change is within the central portions of an AV valve.

**Liver**
Sections of liver show central hepatocyte atrophy.

**Spleen**
The architecture of the spleen is unremarkable except for prominent congestion.

**Kidneys**
The kidneys have prominent focal autolysis but are otherwise unremarkable.

**Pancreas**
The pancreas is markedly autolytic.

**Brain**
The brain has evidence of diffuse neuronal ischemia and edema. Lesser changes are present within the brain stem.

**Tongue**
The surface epithelium of the tongue is unremarkable. At the base of the tongue foci of acute hemorrhage are within the musculature of the tongue and deeper lingual glands.

### Thyroid
The thyroid is histologically unremarkable.

### Testes
The testes are free of hemorrhage. Active spermatogenesis is not evident.

### Coronary artery
Section of the proximal left anterior descending coronary artery shows eccentric non-calcific atherosclerosis causing 80% luminal occlusion.

### Spinal cord
The cervical spinal cord as focal acute hemorrhages within its central portions. Additionally fragments of necrotic cerebellar tissue have been translocated into the subdural areas surrounding the cord proper.

*James R. Lauridson*

James R. Lauridson, MD
June 5, 2013