# MOBILE POLICE DEPARTMENT
# MOBILE, ALABAMA

GENERAL ORDER #70
03/06/08
SUBJECT: PRISONER TRANSPORTATION

INDEX

70.1.1  PRE-TRANSPORT PRISONER SEARCH
70.1.2  SEARCH OF TRANSPORT VEHICLES
70.1.3  PROCEDURES FOR TRANSPORTING BY VEHICLE
70.1.4  INTERRUPTION OF PRISONER TRANSPORT
70.1.5  PRISONER COMMUNICATION
70.1.6  TRANSPORT DESTINATION PROCEDURES
70.1.7  PRISONER ESCAPE FROM TRANSPORT
70.1.8  PROCEDURES FOR SECURITY HAZARD
70.2.1  PRISONER RESTRAINT REQUIREMENTS
70.3.1  SICK, INJURED, AND DISABLED PRISONERS
70.3.2  HOSPITAL SECURITY AND CONTROL
70.3.3  SPECIAL SITUATIONS
70.4.1  VEHICLE SAFETY BARRIERS
70.4.2  REAR COMPARTMENT MODIFICATIONS
70.5.1  PRISONER IDENTIFICATION AND DOCUMENTATION

## 70.1.1  PRE-TRANSPORT PRISONER SEARCH

The transporting officer is legally responsible for the safety and custody of the prisoner being transported. It must be assumed that the prisoner may have had an opportunity to obtain contraband, a weapon, or other items prior to the time the officer accepts him or her for transport. The officer should never assume that someone else has searched the prisoner. Prisoners will be searched each time they come into the transporting officer's custody.

The search will include determination of the contents of all pockets and articles of clothing, as well as purses and baggage. Purses and baggage will not be left in the prisoner compartment with the prisoner, but should be kept in the driver's compartment or trunk of the transporting vehicle.

Whenever civilian personnel are transported in a department vehicle for the purpose of providing public assistance, or for other non-criminal matters, the transporting officer may ask permission to search that person solely for officer safety purposes. Such persons should be asked for permission to conduct a frisk or pat-down search for weapons. The transporting officer should inform the citizen that the search is for safety purposes only, and refusal to submit to such a search may warrant the officer to refuse transportation.

## 70.1.2  SEARCH OF TRANSPORT VEHICLES

Officers should ensure that any vehicle used to transport a prisoner is free of weapons, contraband, or any other unauthorized or dangerous item before and after the prisoner comes in contact with the transporting vehicle. An inspection prior to the beginning of each shift will ensure the vehicle has not been tampered with since last used. Pre-transport inspection/examination ensures the vehicle is mechanically safe, is free of damage or defect, and is properly equipped for use.

Pre-shift vehicle inspection should include a visual check of the interior and exterior of the vehicle. Items such as the spare tire, the jack, and fuel and oil levels; as well as the ignition system, engine operation, and electrical and emergency equipment should be inspected for defects or damage. In the event that a piece of equipment is found to be in disrepair or is unusable, such deficiency should be immediately reported to the shift supervisor. If immediate remedy is not possible, the deficiency should be documented in writing on a work order to the shift supervisor, and another vehicle should be inspected and taken.

COM.MINGO 000321

Each time a prisoner is to be transported, the police vehicle should be examined to ensure that no weapon, contraband, or other property is present. Some latitude may be allowed when an officer has been in constant control of the vehicle following the pre-transport inspection and the introduction of the prisoner to the vehicle. However, because most vehicles will not have been under constant supervision, an officer should assume that opportunity may have existed for the introduction of weapons, contraband, or other unauthorized or dangerous items, therefore necessitating a search of the vehicle.

Once a prisoner has been removed from the vehicle, a thorough search should be conducted, as soon as practical. In all cases, this search should be conducted before the vehicle is reused for prisoner transport. This will not only ensure that the prisoner has left nothing in the vehicle, but, if articles are found, possession can be linked back to the prisoner.

### 70.1.3 PROCEDURES FOR TRANSPORTING BY VEHICLE

For safety reasons, the prisoner should be under observation at all times. Opportunities for escape or attack on transporting officers should be reduced as much as possible. The prisoner should be made as comfortable as possible, given the length of the trip being made, and secured to the maximum degree with appropriate restraining devices.

During transport the transporting officer will maintain visual contact of the prisoner to ensure prisoner supervision and prevent escape. Additional officers will be utilized, as necessary, to guarantee the safety of the officer, the prisoner, and the general public. Prisoners should be restrained with their hands cuffed behind their back prior to being placed into the transport vehicle, and, once secured, the prisoner should be transported to the designated detention facility without unnecessary delay. Delays will only be taken to render emergency assistance, (See GO 70.1.4 - Interruption of Prisoner Transport.)

Officers shall ensure the following when a prisoner is placed in a transport vehicle:

1. That airflow to the prisoner is sufficient and continuous.
2. The temperature does not reach a point (hot or cold) that would cause the prisoner unreasonable discomfort, i.e. sweating, sickness, etc.
3. That the transport vehicle's air conditioner or heater is functioning efficiently.

### 70.1.4 INTERRUPTION OF PRISONER TRANSPORT

The primary duty of the transporting officer is the safe delivery of the prisoner in his care. This directive should stipulate circumstances under which the transporting officer can stop to respond to the need for law enforcement services while transporting a prisoner. However, the directive should caution that diversionary incidents, whether or not instigated by persons attempting to free the prisoner, may divert the transport officer and place the prisoner in jeopardy or enhance chances for escape. The general principles of tort law impose a duty of care on the transporting officer to protect the prisoner from injury. Only when the risk to third parties is both clear and grave and the risk to the prisoner is minimal should the officer stop to render assistance.

Any such interruption will require that the transporting officer notify the Communications Center as to his/her location and the nature of the activity. Officers should use extreme caution in these situations, in that the perceived incident may in fact be a ruse for the prisoner to escape. Officers transporting prisoners will not lose visual contact with the prisoners while providing his services.

During long distance transports, care should be taken when stopping for fuel and meals or for allowing the prisoners reasonable opportunities to use toilet facilities. Locations should be alternated and randomly selected so as to preclude any conspired act to affect the escape of the prisoner. Whenever possible, two escort officers, inclusive of the driver, should be used in this situation. Drive-thru facilities should be utilized when possible for meals. Normally, no stops will be made while transporting from the point of arrest to the booking/processing location.

### 70.1.5 PRISONER COMMUNICATION

Safety aspects of the transport function require that the prisoner's right to communicate with attorneys and others will not normally be exercised during the period that the prisoner is being transported.
Due to the difficulty in providing security and safety to the public, the prisoner, and the transporting officer, a prisoner being transported to, from, or between custodial facilities **will not** be allowed to communicate with others. The transporting officer will deny all requests for such communication (this includes the use of cell phones). The prisoner's right to communicate with attorneys and others will not be exercised during the period that the prisoner is being

COM.MINGO 000322

transported. This will also include other persons being detained for investigative purposes.

### 70.1.6 TRANSPORT DESTINATION PROCEDURES

Members of this agency will comply with the transfer and booking regulations of the receiving agency and will submit all appropriate documentation to the proper authority for the prosecution of the prisoner.

Upon arrival at the receiving agency, the officer should utilize one of the security bay's parking spaces. The prisoner is not to be removed from the vehicle until the bay door is secured. Before removing the prisoner from the transport vehicle, the officer must secure his/her firearm either in the trunk area of the transport vehicle or in the gun locker housed in the security bay area. At the instruction of the receiving/corrections officer and dependent on the prisoner's demeanor, the restraining devices may be removed once inside the booking area.

If the transporting officer has the prisoner's property, other than that which is carried on the prisoner's person, he will safeguard it by tagging and securing such property in the Police *Property Detail. The receiving facility's officer will safeguard those items that the prisoner carries on his person.

Any and all documentation necessary for the booking process of the prisoner will be turned in to the receiving/corrections officer at the time of prisoner transfer. All misdemeanor warrants and arrest documentation will be processed through the Municipal Court Magistrate's Office at the time of booking.

Prior to transporting a handicapped prisoner to a custodial facility, the transporting officer should contact that facility and advise them of the prisoner's condition so that special arrangements may be made prior to the prisoner's arrival. Wheelchairs or crutches may be transported in the police vehicle, but such equipment will not be placed in that portion of the vehicle used to confine the prisoner (see GO 70.3.1.).

### 70.1.7 PRISONER ESCAPE FROM TRANSPORT

In the event of an escape it will be necessary for officers to have an immediate plan of action that will result in a swift and safe apprehension of the fleeing criminal. If the escape occurs in another jurisdiction, the authority of the escorting officer to recapture the prisoner will depend upon the powers officers have in that jurisdiction. Other considerations will be the request for support and assistance of mutual aid from the jurisdiction and state in which the escape occurred.

A. Escapes within Mobile Police Jurisdiction:

In the event of an escape inside Mobile police jurisdiction, in addition to making every attempt to immediately return the prisoner to custody provided that it is safe and practical to do so, the transporting officer should immediately notify the Communications Center of such occurrence and provide, at least, the following information:

1. The location of the escape and the prisoner's last direction of travel.
2. For what the prisoner is in custody, and if the prisoner is a danger to the public, himself, or other officers.
3. A complete physical description of the prisoner including any clothing.
4. Make every attempt to immediately return the prisoner to custody, if it is safe and practical to do so.
5. Notify the on-duty Shift Commander/Precinct Commander:
   a. Request additional personnel and coordinate their placement and activities through the commander.
   b. Advise the on-duty commander of any information that will assist in determining other departmental resources that the supervisor may want to utilize, i.e., K-9, TRU, etc.

The transporting officer shall also prepare the necessary reports concerning the incident. If appropriate, the prisoner should be charged with escape charges and any other criminal charge that may apply.

B. Escapes outside Mobile Police Jurisdiction:

If an escape occurs outside Mobile police jurisdiction, the transporting officer will immediately:

1. Notify the department's Communications Center of the occurrence.
2. Notify the local jurisdiction's law enforcement agencies for assistance.
3. Make every effort to return the prisoner to custody, if it is safe and practical to do so.

COM.MINGO 000323

4. Notify the officer's on-duty shift commander as soon as possible.
5. Assist the jurisdiction in which the escape took place by:
   a. Providing all information concerning the escapee including descriptions, reason for in-custody status, possible destinations, etc.
   b. Preparing any necessary reports requested by such jurisdiction.
6. Prepare the necessary reports for this department concerning the incident.

### 70.1.8 PROCEDURES FOR SECURITY HAZARD

In cases of unusual security risks, the receiving agency should be notified so that they can take additional security steps and make allowances for the use of additional restraining devices or personnel.

There are times that an officer will take custody of a mentally ill or chemically impaired person. People like this can be quite violent and disruptive. An officer may use any approved restraining device as listed in General Order 70.2.1 in order to prevent injury to either the officer or the disturbed person. Whenever unusual restraint devices/tactics are employed in the transport or restraint of an individual, their use should be documented in written form. Receiving agencies should likewise be notified.

### 70.2.1 PRISONER RESTRAINT REQUIREMENTS

It is necessary for officers to know when and how prisoners are to be restrained and when, where, and how particular restraining devices are to be employed, including special methods and which are specifically prohibited. Agency members should be aware that some techniques have been found to contribute to serious physical injury or death (e.g., "positional asphyxia") and are prohibited.

Approved restraining devices, authorized by this department, will include the following:
1. Department-approved handcuffs.
2. Tuff-tie cloth cuffs.
3. Leg restraints (shackles).
4. Flex-cuffs (used for mass arrest situations).

In most cases, if a prisoner has no significant physical or health conditions that would warrant otherwise, they will be handcuffed behind the back. The safety of the prisoner and the transporting officer requires due care when transporting prisoners. If a situation arises for handcuffing a prisoner in the front, the officer may use his discretion in such securing of the prisoner. Reasonable physical restraint will be applied at the discretion of the transporting officer. Should leg restraints (shackles) be needed and the prisoner further restrained, the officer should ensure that the prisoner is able to breathe properly without straining. The prisoner should be placed on his/her side facing away from the back of the seat. At no time will a prisoner be restrained to any part of the transport vehicle while being transported.

Situations for handcuffing persons in the front may, at the officer's discretion, include:

1. Elderly or ill persons arrested for minor offenses.
2. Persons who are temporarily incapacitated, those with a serious wound to the arm or hand, or a woman in advanced stages of pregnancy.
3. Prisoners with impaired arms.
4. Prisoners in long-term transport situations (e.g., extradition).

When transporting more than one prisoner, it is permissible to handcuff prisoners in front with arms intertwined. When a prisoner is to be transported over a period of several hours, the prisoner may be handcuffed with his hands to the front and secured in the back seat with a seat belt.

It should not be assumed that restraining devices are unnecessary for disabled prisoners. However, a prisoner in a wheelchair or one who uses walking aids may not require the use of restraining devices in all instances. Restraining devices also may be harmful to sick or injured prisoners, depending upon the nature of the sickness or injury. Therefore, specific circumstances will define when restraining devices should and should not be necessary and the extent of the officer's discretion in their application.

Every precaution should be taken to ensure the safety of the officer and the handicapped prisoner. Whatever restraining devices are utilized should not interfere with the prisoner's ability to balance or protect himself during transport

A sick or injured prisoner in custody for a crime of violence will be restrained as much as is consistent with his sickness or injury. Any such sick or injured prisoner transported in a police vehicle must be able to have his hands cuffed.

COM.MINGO 000324

Any such prisoner transported by ambulance will be restrained on a gurney or backboard as securely as possible, consistent with his injuries. A sick or injured prisoner in custody for non-violent offenses may or may not be restrained during transport based on the decision of the transporting officer.

In making the decision to restrain or not restrain a sick or injured prisoner, the transporting officer should consider at least the following:

1. Safety of the officer and the prisoner.
2. Nature of offense and circumstances surrounding the capture of the prisoner and the prisoner's reaction to same.
3. The prisoner's current and past demeanor.
4. The past criminal history of the prisoner, and potential sentence for the current offense.
5. The possibility of the prisoner injuring himself.

Mentally disabled prisoners may pose a significant threat to themselves and/or the transporting officers. The selected device should restrain the prisoner securely without causing injury. These devices should be utilized whenever practical but should not preclude the use of handcuffs in emergency situations.

### 70.3.1 SICK, INJURED, AND DISABLED PRISONERS

If a prisoner becomes sick or is injured incidental to arrest, if at all possible, the arresting officer should immediately seek medical attention for the prisoner.

Physically and mentally disabled prisoners present conditions that dictate special care and attention. For example, the type of vehicle used would be a consideration when transporting non-ambulatory prisoners or those requiring wheelchairs, crutches, or prosthetic appliances. It may be necessary to transport medicine, insulin, and other special items for certain prisoners during transport. The safety of the prisoner and the transporting officer requires due care when transporting disabled prisoners.

If a prisoner is handicapped to an extent that the officer feels the prisoner cannot be safely transported in a police vehicle, the officer will contact the shift supervisor to coordinate one of the following: The prisoner will, if possible, be processed and released in the field, if a full booking procedure is not absolutely necessary; or, the prisoner may be transported to a booking or holding facility by ambulance. Any prisoner in custody for a criminal offense who is transported in an ambulance (contract, fire department, or private) must be accompanied in the ambulance by an officer.

Any prisoner complaining of sickness or injury, or in the judgment of the officer appears to be sick or injured whether complaining of same or not, will be treated as follows: A fire department ambulance will be called to the prisoner's location; based upon the paramedic's recommendation the prisoner will be either administered first aid by the paramedics or transported to the emergency room at an approved medical facility; a written report will be made regarding any medical attention or first aid given to the prisoner, including the dates, times, places, and names of the providers.

A sick or injured prisoner will be transported in a police vehicle only after a fire department paramedic unit has examined the prisoner and consider it safe to do so. Whether or not the sick or injured prisoner is transported in a police vehicle in restraints is a decision left to the transporting officer.

### 70.3.2 HOSPITAL SECURITY AND CONTROL

Prisoners who are taken to hospitals for immediate treatment should be closely monitored. Opportunities for escape, suicide, and assault on hospital personnel or the transporting officer should be guarded against. The transporting officer should also note that the likelihood of such an occurrence is more prevalent if the prisoner is unrestrained and/or out of sight. If restraints should be removed for treatment, caution should be exercised while the prisoner is unfettered. Only under unusual circumstances will the prisoner be allowed out of the transporting officer's sight.

If the prisoner is admitted to the hospital, the agency may need to provide additional security. Some measures to be considered are: the type and period of treatment, the degree of risk, isolation, the need for 24-hour coverage, continued use of restraints, meals and utensils, the monitoring of all personal contacts with the prisoner, etc. Visitors should be prohibited, including telephone contact, with the prisoner.

Officers assigned to guard the prisoner should be cautioned not to become lax while performing their duty. Long tedious hours with little activity easily lead to complacency and carelessness. Officers should also avoid fraternizing with the prisoner at any time. Any unusual occurrence should be recorded. Frequent rotation of guards and close supervision by superiors is recommended.

COM.MINGO 000325

When released from treatment, the prisoner's condition should be carefully recorded. All instructions for future treatment and medication should be obtained in writing and signed by the attending physician. Before transporting, the prisoner and his personal property should be searched and proper restrains applied to his person.

An officer will accompany any prisoner transported to or from a medical care facility for examination or treatment. The officer will attempt to maintain continual visual contact with the prisoner while following good security practices. An officer should evaluate a prisoner's security risk based on criminal background, the nature of the offense, physical condition, and statements and actions observed.

When a prisoner is transported to a local hospital or medical facility for any reason, extreme caution will be taken to ensure that the prisoner is isolated from other patients and is not left unattended or permitted to escape the immediate control of the transporting officer.

Should the prisoner need to be admitted, the transportation officer will notify the on-duty shift commander of the circumstances. The transportation officer will not leave a prisoner at the medical facility until relief is provided by another officer, private security personnel arrive, or when instructed by a supervisor to do otherwise. The transporting officer will remove prisoner restraints only when necessary and requested by the medical staff.

### 70.3.3 SPECIAL SITUATIONS

The unusual circumstances in special transport situations will provide extraordinary opportunities to a prisoner for unauthorized personal contact, escape, or inflicting injury upon himself or others. Therefore, special precautions and security measures should be stipulated and employed.

Males and females will not be transported together in the same police vehicle, except in those cases involving police assistance to the public or when transportation is for the purpose of having witnesses, complainants, or other non-arrest situations expedited without undue delays.

Before transporting a prisoner of the opposite sex, officers will notify the communication's operator that they have such a prisoner and give their location, exact odometer reading, and final destination. During actual transportation, officers will have the prisoner seated in the rear passenger section of the police vehicle. Before discharging a prisoner of the opposite sex, officers will notify the police operator that they have arrived at their destination and give their exact odometer reading. Operators will see that the above communication is recorded correctly on the provided forms and shall indicate the starting and ending times.

### 70.4.1 VEHICLE SAFETY BARRIERS

The safety barrier prevents the prisoner from having access to the driver's compartment of the vehicle. Communication between the front and rear compartments should not be impaired to the point that precludes conversation. Installation of such a barrier should be done in a manner that promotes the safety of occupants in the front and rear compartments.

All marked vehicles used for prisoner transport will have safety barriers located between front and rear compartments. The safety barrier will be constructed of heavy-gauge metal and heavy-gauge clear plastic. The plastic barriers equipped with a slide window may be opened for communications but will be closed during the transport of prisoners.

### 70.4.2 REAR COMPARTMENT MODIFICATIONS

Marked vehicles will have the rear window controls and door handles disabled. Rear door locks and rear windows can be operated from the driver's compartment only.

### 70.5.1 PRISONER IDENTIFICATION AND DOCUMENTATION

Each prisoner being transported from a detention facility should be positively identified as the person who is to be moved. Booking records and numbers assigned to the prisoner in the detention facility should be verified and the person concerned confirmed as the person described in the records.

If the prisoner is to be transported to court, such information would include the prisoner's name, facility prisoner number, and court to which the prisoner is to be delivered. When transporting a prisoner to another facility, the documentation should include commitment papers, the prisoner's medical records, and personal property. For interstate transports, the escort officer should have a properly executed governor's warrant or a properly executed waiver. The escort officer should also be specifically alerted to any potential security problems that the

COM.MINGO 000326

prisoner may present during transport. This information should include escape or suicidal tendencies as well as unusual illnesses.

By order of:

Phillip M. Garrett
Chief of Police

COM.MINGO 000327